UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CYNTHIA HAM,<br><br>　　　　　　　　　Plaintiff,<br>　　v.<br><br>NOVARTIS INTERNATIONAL AG,<br>et al.,<br><br>　　　　　　　　　Defendants. | Civil Action No. 23-3503 (MEF) (MAH)<br><br>REPORT AND RECOMMENDATION |

**HAMMER, United States Magistrate Judge**

This matter comes before this Court on the motion of Plaintiff, Cynthia Ham ("Plaintiff"), to remand this action to the Superior Court of New Jersey, Law Division, Morris County. *See generally* Mot. to Remand, D.E. 13. The Honorable Michael E. Farbiarz, U.S.D.J., referred this motion to the Undersigned to issue a Report and Recommendation.[1] *See* Local Civ. R. 72.1(a)(2). The Undersigned has considered the briefs submitted in support of, and in opposition to, the motion. This Court conducted oral argument on October 17, 2023. For the reasons set forth below, the Undersigned respectfully recommends that the District Court grants Plaintiff's motion and remand this matter to the state court.

I.　**BACKGROUND**

Defendant Novartis International AG ("Novartis" or collectively "Defendants") is a Swiss pharmaceutical company. Compl., D.E. 1-1, at ¶¶ 3-5. Defendant Novartis Pharmaceuticals Corporation ("NPC" or collectively "Defendants") is its subsidiary with its principal place of

---

[1] A decision to remand is dispositive. *In re U.S. Healthcare*, 159 F.3d 142, 146 (3d Cir. 1998) ("[A]n order of remand is no less dispositive than a dismissal order of a federal action for lack of subject matter jurisdiction where a parallel proceeding is pending in the state court."). Accordingly, this Court addresses Plaintiff's motion via this Report and Recommendation.

business in East Hanover, New Jersey. *Id.* Plaintiff alleges that NPC hired Plaintiff on May 1, 2018 as the Ethics, Risk, and Compliance Advisor for "US Patient Support Services and Managed Markets." *Id.* at ¶ 14. Plaintiff alleges that following the resolution of civil litigation between NPC and the United States Department of Justice ("DOJ"), NPC agreed to pay the DOJ more than $420 million and enter into a Corporate Integrity Agreement ("CIA"). *Id.* at ¶¶ 18-19. The CIA required Defendants to engage in compliance programs and subjected them to government monitoring for promotional activities, including NPC's Patient Support Services ("PSS") programs. *Id.*

Plaintiff contends throughout her employment, she observed improper behavior that caused her to "form[] the reasonable objective belief" that certain of Defendants' programs constituted illegal kickback schemes in violation of federal law. *Id.* at ¶ 22. For example, Plaintiff alleges that NPC's Cardiac Nurse Program, by which NPC paid for cardiac nurses to visit patients who had been prescribed Entresto, improperly incentivized physicians to prescribe Entresto, a drug Defendants manufactured and sold. *Id.* at ¶¶ 22-23. Plaintiff also claims that a proposed Pillpack Agreement provided illegal discounts and kickbacks, patient steering, and "hosts of other illegalities." *Id.* at ¶ 61. In addition to these programs, Plaintiff contends Defendants failed to follow necessary compliance protocols under the CIA, such as mislabeling materials to avoid production to the DOJ in response to a subpoena, and consummating business deals without necessary due diligence on programs and third-party contracts. *Id.* at ¶¶ 48, 58.

Plaintiff alleges that she brought her concerns to upper management regarding the illegality of NPC's programs, and NPC's failure to adhere to proper protocols under the CIA and otherwise. However, she claims that Defendants retaliated against her in violation of the Conscientious Employee Act, N.J.S.A. 39:19-3 *et seq.* ("CEPA"). *Id.* at ¶¶ 42-53, 67-71, 76-110. For example,

she alleges that in retaliation for voicing her concerns about the Cardiac Nurse Program, NPC removed her as the Compliance Advisor for PSS and Managed Markets, removed her from the leadership teams for PSS and Managed Markets, and gave her a "dead-end" assignment supporting Defendants' legacy ophthalmology products. *Id.* at ¶¶ 42-46. Plaintiff also claims NPC retaliated against her by improperly subjecting Plaintiff to several internal investigations. Specifically, she contends that in June 2019, NPC instigated an investigation for her behavior in a June 2019 meeting concerning the Pillpack Agreement. *Id.* at ¶¶ 67-68. Plaintiff claims that in October 2019, she was internally investigated for her conduct during a meeting of the Governance Board. *Id.* at ¶¶ 79-80. Plaintiff also alleges that because she objected to wrongdoing within NPC, she received an unfair and inaccurate 2019 year-end performance review. *Id.* at ¶¶ 90-94.

Plaintiff further alleges that on March 12, 2020, she was issued a Conduct Memo. Within NPC, a Conduct Memo is generally regarded as a "final warning" before termination, and is issued only following prior disciplinary actions, proper notice, and an opportunity to respond. *Id.* at ¶¶ 101-03. Plaintiff claims the issuance of her Conduct Memo violated these required practices and policies and was "riddled with false allegations." *Id.* at ¶¶ 103-08. Plaintiff also contends the Conduct Memo was an attempt to create a paper trail to justify her wrongful termination for her protected whistleblowing activities. *Id.* at ¶¶ 103-08.

In 2021, Plaintiff was diagnosed with ocular cancer, which required her to take short-term medical leave. *Id.* at ¶ 114. According to Plaintiff, Defendants approved the short-term leave through November 2021. *Id.* at ¶ 120. Despite this approval, Plaintiff alleges Defendants stated she would be terminated if she did not return to work on June 1, 2021. *Id.* at ¶ 123. Ultimately, Plaintiff's medical leave was extended through August 2021. *Id.* at ¶ 133. Plaintiff claims that she conveyed to the necessary individuals within NPC the accommodations she would require

3

when she eventually returned to work. *Id.* at ¶¶ 119, 125.

On June 7, 2021, Plaintiff filed a complaint with Defendants' Speak Up Office, the company's whistleblowing hotline. *Id.* at ¶136. In her complaint to the office, she alleged Defendants were "violating her rights by discriminating and/or retaliating against her because of her disability." *Id.* Plaintiff returned to work on September 7, 2021, but contends Defendants failed to provide her with the required accommodations. *Id.* at ¶ 145.

On October 19, 2021, Defendants terminated Plaintiff "as a result of the elimination of her position." *Id.* at ¶ 152. Plaintiff claims, however, the true reason for her termination was solely "discriminatory and retaliatory" in violation of state law. *Id.* at ¶¶ 154, 156. Plaintiff also alleges that following her departure, Defendants "deliberately attempted to interfere and/or ha[ve] interfered with [Plaintiff's] Long Term Disability benefits . . . in retaliation for [her] protected activities in presenting good faith claims for retaliation and discrimination." *Id.* at ¶ 157.

Plaintiff initiated this action on May 31, 2023, in the Superior Court of New Jersey, Law Division, Morris County. She alleged ten causes of action, all for violations of either CEPA or the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12 *et seq.* ("NJLAD"). On June 28, 2023, Defendants removed the matter to this Court pursuant to 28 U.S.C. § 1331. *See generally* Not. of Removal, D.E. 1. Defendants assert that federal question jurisdiction exists because Plaintiff's claims are completely preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Specifically, Defendants argue because ERISA violations "underly **all** of Plaintiff's [NJLAD and CEPA] claims," removal is required because CEPA and the NJLAD do not provide independent legal duties for Plaintiff's claims. *Id.* at 8 (emphasis in original).

On June 29, 2023, Plaintiff filed an Amended Complaint, and deleted several assertions

4

that were in the initial Complaint. *See generally* Am. Comp., D.E. 7; *see also* Opp'n to Mot. to Remand, Ex. A, D.E. 29-5. Specifically, Plaintiff removed any direct mention of her health plan insurance carrier, MetLife. Opp'n to Mot. to Remand, D.E. 29-5, at 29, 30, 33, 37. She also removed any allegations that Defendants interfered with her disability accommodations or health benefits. *Id.* Plaintiff also added two additional counts against Defendants under CEPA and NJLAD. *Id.* at 45-46. Accordingly, the Amended Complaint pleads solely violations of CEPA and NJLAD.

On July 28, 2023, Plaintiff filed the instant motion to remand the action. *See generally* Mot. to Remand, D.E. 13. Plaintiff argues remand is appropriate because her claims do not present "a colorable ERISA [c]laim" or otherwise provide a basis for federal jurisdiction. Br. in Supp. of Mot. to Remand, D.E. 14, at 10. Specifically, she contends neither the initial Complaint nor the Amended Complaint seeks to enforce her rights under ERISA, since she does not pursue recovery for any lost benefits. *Id.* With respect to her Amended Complaint, Plaintiff avers any deletions were made to "clarify[] the state-law employment claims that were originally asserted." *Id.* at 5. Plaintiff also argues her claims implicate independent legal duties outside of Defendants' obligations under ERISA. *Id.* at 12. Namely, she contends Defendants' "obstructive, non-communicative and threatening" manner regarding her return to work following her medical leave violated NJLAD and CEPA based on her protected conduct as a whistleblower. *Id.* Finally, she requests an award of attorney's fees incurred to combat Defendants' removal. *Id.* at 13-14.

Defendants maintain Plaintiff's allegations of interference with her disability benefits and medical leave in her initial Complaint bring her claims within the ambit of ERISA and warrant removal. Opp'n to Mot. to Remand, D.E. 29, at 7-8, 12. Further, Defendants argue it is immaterial that Plaintiff does not seek recovery of any lost benefits under ERISA because an employer can

possess a benefits-defeating motive without actually depriving an individual of benefits. *Id.* at 12. Defendants also argue remand is inappropriate despite Plaintiff's Amended Complaint, as her claims still implicate ERISA based on allegations of Defendants' actions during her medical leave. *Id.* at 13. Further, Defendants claim Plaintiff's action of amending her Complaint illustrates forum manipulation and bars remand. *Id.* at 15-16. Finally, Defendants contend their removal of the matter is reasonably objective based on the facts and the complex area of ERISA preemption, therefore Plaintiff's request for attorney's fees should be rejected. *Id.* at 22-24.

Plaintiff's reply brief reiterates any references to her disability benefits in the initial Complaint were solely to provide context to her CEPA and NJLAD claims. Reply Br. in Further Supp. of Mot. to Remand, D.E. 30, at 1. Additionally, Plaintiff maintains preemption is inappropriate as both complaints do not contain colorable claims under ERISA. *Id.* at 6. Rather, her allegations implicate legal duties independent from ERISA, namely to "be free from retaliation for taking medical leave." *Id.*

## II. ANALYSIS

### A. Motion to Remand

As the party asserting federal jurisdiction by way of removal, Defendants bear the burden of establishing that subject matter jurisdiction exists at all stages in which the case is properly before the federal court. *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004). Section 1441 is to be construed strictly, and therefore, all doubts must be resolved in favor of remand. *Id.*; *see also Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992) ("[R]emoval statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand.") (citations omitted) (internal quotations marks omitted). A federal court lacking subject matter jurisdiction over a case must remand the matter back to state court. 28

U.S.C. § 1447(c); *see Farina v. Nokia, Inc.*, 625 F.3d 97, 114 (3d Cir. 2010) (noting that a federal court cannot proceed without subject matter jurisdiction, nor can a party waive such jurisdiction).

A party may move to remand an action back to state court based on an alleged defect in the removal procedure, or lack of subject matter jurisdiction. 28 U.S.C. § 1447(c). Section 1447(c), which sets forth the procedures for moving to remand, provides in pertinent part:

> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within [thirty] days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

28 U.S.C. § 1447(c). In determining whether an action should be remanded to state court, "a district court must focus on the operative complaint at the time the petition for removal was filed." *Collins v. Stevens Inst. of Tech.*, No. 15-4393, 2016 WL 4579973, at *2 (D.N.J. Aug. 3, 2016). District courts have federal question subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In order for a claim to arise under federal law, the "well-pleaded complaint" must establish "either that federal law creates the cause of action or that the plaintiffs['] right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for Southern Cal.,* 463 U.S. 1, 27-28 (1983).

However, an exception to the well-pleaded complaint rule is the doctrine of complete preemption, which "operates to confer original federal jurisdiction notwithstanding the absence of a federal cause of action on the face of the complaint." *N.J. Carpenters v. Tishman Constr. Corp.* 760 F.3d 297, 302 (3d Cir. 2014) (quoting *In re U.S. Healthcare, Inc.,* 193 F.3d 151, 160 (3d Cir. 1999)). Section 502(a) of ERISA provides in pertinent part that "[a] civil action may be brought . . . by a participant or beneficiary . . . for relief provided for in subsection (c) of this section, or . . .

7

to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights for future benefits under the terms of the plan." 29 U.S.C. § 1132(a). The Supreme Court has recognized the complete preemption doctrine in claims pursuant to Section 502(a). *See Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 66 (1987). "ERISA's civil enforcement mechanism, [Section] 502(a), 'is one of those provisions with such extraordinary pre-emptive power that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule,' and permits removal." *N.J. Carpenters*, 760 F.3d at 303 (quoting *Aetna Health Inc. v. Davila,* 542 U.S. 200, 209 (2004)). Accordingly, where Section 502(a) preempts a plaintiff's claims, federal jurisdiction is proper.

To determine if Section 502(a) completely preempts a plaintiff's state law claims two prongs must be satisfied: (1) the plaintiff could have brought the action under Section 502(a); and (2) no independent legal duty supports the plaintiff's claims. *See Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan,* 388 F.3d 393, 400 (3d Cir. 2004). As the test is conjunctive, to establish complete preemption the defendant must establish both prongs. *N.J. Carpenters,* 760 F.3d at 303.

      **i.   Prong One**

To satisfy the first prong, a plaintiff must have been able to bring their claim under Section 502. *See e.g.*, *Davila*, 542 U.S. at 209; *Pascack Valley Hosp.*, 388 F.3d at 400. Section 502 is the civil enforcement provision of ERISA and is preempting as to "any state law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy." *Davila*, 542 U.S. at 208-09. It is irrelevant, however, if a plaintiff's complaint fails to explicitly assert their allegations pursuant to ERISA. *See Wolman v. Petro Technik, Inc.*, No. 11-1623, 2011 WL 5082237, at * 3 (D.N.J. Sept. 16, 2011). Therefore, removal to federal court is considered appropriate "even if

8

pleaded in terms of a state law, [as the claim] is in reality based on federal law." *Davila*, 542 U.S. at 208. Relevant to this Court's analysis of prong one, Section 510 provides:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . The provisions of [Section 502] shall be applicable in the enforcement of this section.

29 U.S.C. § 1140. As such, "any state claim that falls within Section 510 is necessarily within Section 502." *Wood v. Prudential Ins. Co. of Am.*, 207 F.2d 674, 676 (3d Cir. 2000).

The Third Circuit has described the intent behind Section 510 as a way to "prevent employers from discharging or harassing their employees in order to keep them from obtaining ERISA-protected benefits." *Kowlaski v. L&F Prods.*, 82 F.3d 1283, 1287 (3d Cir. 1996). Further, this section seeks to prevent employers from "taking adverse employment actions with a 'benefits-defeating motive.'" *Wolman*, 2011 WL 5082237, at * 6 (quoting *Wood*, 207 F.3d at 677). Accordingly, for prong one to be met, the deprivation of the plaintiff's benefits must be the "motivating purpose for, and not merely a consequence of, [his or her] termination." *See Wood*, 207 F.3d at 676.

Here, it is debatable whether from the face of Plaintiff's initial Complaint her claims implicate ERISA under Section 502. It is true that the initial Complaint alleges several instances of Defendants' interference with her benefits under her health plan. *See* Compl., D.E. 1-1, at ¶¶ 116-21, 135. On the other hand, it could equally be said that Plaintiff's initial Complaint contains purely state law claims supported by factual allegations that illustrate a continuum of instances of retaliation that are completely divorced from her disability or health benefits. Rather, these instances demonstrate Defendants' alleged response to Plaintiff's whistle blowing activities, including Plaintiff's unfair performance reviews; her removal from leadership teams; demotion

9

from her previous position; being investigated under false pretenses; beratement and humiliation by upper management; and a failure to follow proper disciplinary protocol. *Id.* at ¶¶ 90-94, 76-78, 42-46, 67-71, 95-100, 47-43, 135. In any event, this Court need not reach a determination under the first prong as this Court concludes prong two is not met.

### ii. Prong Two

To establish prong two under the conjunctive test, there must be no independent legal duty to support the plaintiff's claims. *See MHA, LLC v. Empire Healthchoice HMO, Inc.*, No. 17-6391, 2018 WL 549641, at *2 (D.N.J. Jan. 25, 2018). A legal duty is considered "independent" when "it is not based on an obligation under an ERISA plan, or if it 'would exist whether or not an ERISA plan existed.'" *N.J. Carpenters*, 760 F.3d at 303 (quoting *Marin Gen. Hosp. v. Modestor & Empire Traction Co.*, 581 F.3d 941, 950 (9th Cir. 2009)). Stated differently, to satisfy this prong the state law claims must exist "only because" of the ERISA plan. *See Pascack*, 388 F.3d at 402.

Here, under the initial Complaint, this Court finds Plaintiff's claims are supported by legal duties that are entirely distinct from Plaintiff's ERISA Plan. For example, Plaintiff alleges that Defendants' failure to provide her necessary accommodations following her cancer treatments constituted a violation under NJLAD. It is well established that under NJLAD, Defendants would have owed Plaintiff an independent duty to provide reasonable accommodations, regardless of her health plan. *See Spikes v. Chotee, Inc.*, No. 16-406, 2017 WL 3641420, at *6 ("Under the [NJ]LAD, an employer must reasonably accommodate an employee's disability and the related limitations of an employee, 'unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its business.'" (quoting *Hennessey v. Winslow Township*, 368 N.J. Super. 443, 454 (App. Div. 2004)). Plaintiff also alleges that NPC committed acts of retaliation in violation of CEPA, and in ways that had nothing to do with her medical

10

benefits. *See Mazza v. George Yelland, Inc.*, 161 F. Supp. 2d 376, 380 (D.N.J. 2001) ("The purpose of CEPA is to 'enact broad protections against employer retaliation for employees who act in the public interest.'" (quoting *Higgins v. Pascack Valley Hosp.*, 158 N.J. 404, 420 (1999))). For example, she alleges that NPC removed her as the Compliance Advisor for the PSS and Managed Markets and relegated her to an assignment in the legacy ophthalmology products division, after she complained about the Cardiac Nurse Program. Compl., D.E. 1-1, at ¶¶ 42-46. She also complains about an inaccurate 2019 year-end performance review after objecting to wrongdoing within NPC, and several internal investigations for voicing concerns about the Pillpack Agreement and other issues. *Id.* at ¶¶ 67-68, 79-80, 90-94.

Defendants' reliance on *Wolman* is unavailing. Opp'n to Mot. to Remand, D.E. 29, at 11-12. In *Wolman*, the plaintiff's complaint contained allegations which included the defendants' refusal to pay plaintiff's health insurance premiums, plaintiff's denial of access to the employee stock plan, benefits package, and the pension plan due to her gender. *See Wolman*, 2011 WL 5082237, at *4. In that case, the Court concluded prong two was satisfied because plaintiff's allegations were "inextricably intertwined" with the plaintiff's ERISA plan coverage and benefits. *Id.* at * 6. It further found the plaintiff's claims to be dependent on ERISA because they were based on allegations that "the defendants discriminated, retaliated, and/or violated [the plaintiff's] rights in order to deny and interfere with her ERISA protected rights." *Id.* That is not true here. Plaintiff's initial Complaint does not allege that Defendants' retaliation was done for the purpose of interfering with Plaintiff's ERISA protected rights, or because Plaintiff sought to enforce her rights under ERISA.[2] *Wolman*, at *6. Instead, as set forth above, Plaintiff alleges that the various

---

[2] As explained more fully below, the Amended Complaint contains no allegations that Defendants denied Plaintiff disability benefits under ERISA. Also, it has removed any allegations of interference with Plaintiff's disability benefits under ERISA. As such, the Amended Complaint

11

instances where Defendants interfered were initiated for the overarching retaliation and discrimination against Plaintiff's whistleblowing activities.

### B. Amended Complaint

#### i.   Prong One

Even if the initial Complaint implicated ERISA, that certainly is not the case for Plaintiff's Amended Complaint. The Amended Complaint has removed any allegations of interference with Plaintiff's ERISA benefits. Following these deletions, it is beyond cavil that Plaintiff pleads solely state law claims that she could not have brought under Section 502. The Amended Complaint pleads twelve counts of alleged violations of CEPA and NJLAD based on Defendants' acts of discrimination and retaliation in response to Plaintiff's protected whistleblowing activities. These purported actions include demoting Plaintiff; subjecting her to improper internal investigations; removing her from leadership positions; giving her an inaccurate performance review; failing to follow proper disciplinary protocol; and failing to provide her with necessary accommodations. This Court cannot conclude that these claims, and the factual allegations underlying them, suggest that Defendants' alleged treatment of Plaintiff was motivated by an intention to deprive Plaintiff of health care benefits. *See Wood*, 207 F.3d at 676; *see also Joyce v. RJR Nabisco Holdings Corp.*, 126 F.3d 166, 172-73 (3d Cir. 1997) (finding the plaintiff's claims regarding a failure to accommodate a disability was not preempted by ERISA because it did "not have as its basis the

---

does not allege that Defendants acted "with a 'benefits-defeating motive[,]'" nor does it "explicitly allege that [Defendants] w[ere] motivated by [their] desire to interfere and/or deny" Plaintiff's ERISA-protected benefits when it took the adverse action that Plaintiff alleges. *Wolman*, 2011 WL 5082237, at *4 (quoting *Wood*, 207 F.3d at 677). Accordingly, the Amended Complaint significantly distinguishes this case from *Wolman*.

denial of employee benefits, the failure to provide information about such benefits, or the failure to comply in some other way with ERISA").

At oral argument, Defendants contended that the Amended Complaint still alleges interference with Plaintiff's ERISA benefits. For example, Defendants pointed to Paragraphs 120 through 128 of the Amended Complaint to demonstrate that Plaintiff still alleges interference with her ERISA-protected benefits. Paragraphs 120 through 128 concern Plaintiff's leave to address her cancer treatments, her return-to-work date, and the workplace accommodations that she requested. For example, Plaintiff alleges that Defendants told her she would have to return to work by June 1, 2021, despite Plaintiff's medical leave having already been approved through November 2021. Am. Compl., D.E. 4, at ¶¶ 120-21. Plaintiff alleges that when she inquired about this disparity, Defendants refused to engage in an interactive process, and posited that Plaintiff's role was "so critical that it could cause 'undue hardship on the company' if she did not return to work by June 1, 2021." *Id.* at ¶¶ 122-23. Plaintiff further alleges that based on advice from her doctor, she requested from Defendants return-to-work accommodations such as a reduced schedule, supplemental breaks, and office equipment to allow her to work from home. *Id.* at ¶125. According to Plaintiff, Defendants refused to engage with her or to provide the accommodations. *Id.* at ¶¶ 126-29.

Defendants' argument is unavailing because it conflates Plaintiffs' claims under NJLAD with a claim to disability benefits under ERISA. In alleging that Defendants wrongfully insisted that Plaintiff return to work by June 1, 2021, refused to engage in an interactive process concerning the requested accommodations, and refused to provide the workplace accommodations that Plaintiff requested, Plaintiff squarely alleges violations of NJLAD. There is no claim to ERISA disability benefits, such as long-term or short-term disability payments under an ERISA Plan.

Further, it is well settled that NJLAD imposes on employers a duty to provide reasonable accommodations to employees with medical disabilities. *See, e.g., Fitzgerald v. Shore Mem'l Hosp.*, 92 F. Supp. 3d 214, 237 (3d Cir. 2015) (stating "Under the NJLAD, an employer must make a reasonable accommodation to the limitations of an employee or applicant who is a person with a disability, unless the employer can demonstrate that the accommodation would impose an undue hardship." (internal citations omitted)); *Taylor v. Lincare, Inc.*, No. 15-6284, 2016 WL 3849852, at *6 (D.N.J. July 15, 2016) ("[T]aking a disability/medical leave is protected by the NJLAD." (quoting *Boles v. Wal-Mart Stores, Inc.*, 650 Fed. Appx. 125, 128 (3d Cir. 2016))); *Gomez v. Con-Way Central Exp. Inc.*, 6-5252, 2009 WL799243, at *8 (D.N.J. Mar. 24, 2009) ("Under the NJLAD, it is well accepted that an employer must make a reasonable accommodation to the limitations of a handicapped employee or applicant unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its business." (internal citations omitted)).

### ii. Prong Two

This Court's analysis under prong two remains unchanged under the Amended Complaint. Because Defendants' purported actions towards Plaintiff, and the relief she seeks, are based on CEPA and NJLAD, her claims do not rely on her rights under ERISA, and do not require an examination or application of Plaintiff's benefits plan under ERISA. Accordingly, Defendants have failed to satisfy prong two as to the Amended Complaint. *See Davila*, 542 U.S. at 213 (finding the second prong met because defendants' liability arose "entirely from the particular rights and obligations established by the [ERISA] benefit plans," and therefore the plaintiffs' claims were not considered independent).

### iii. 28 U.S.C. § 1367 and Defendants' Allegations of Forum Manipulation

The Defendants also contend that Plaintiff, by amending the complaint, has engaged in forum manipulation and therefore this Court should bar remand. Defendants contend that Plaintiff's concession that the purpose of the amendment was to "make it abundantly clear that [Plaintiff] is not asserting any claims or allegations under ERISA." Opp'n to Mot. to Remand, D.E. 29, at 16-17. Therefore, Defendants argue Plaintiff has conceded the entire purpose of the amendment was to defeat federal jurisdiction. *Id.* Plaintiff, on the other hand, avers that she never plead claims under ERISA, and that the purpose of the amendments was solely to clarify that her claims arose entirely under CEPA and NJLAD. Br. in Supp. of Mot. to Remand, D.E. 14, at 6, 8.

Amendments to a complaint made after removal that are designed to eliminate a federal claim do not necessarily defeat federal jurisdiction. *Seawright v. Greenberg*, 233 Fed. App'x 145, 148 (3d Cir. 2007); *see also Bonanni v. Purdy*, No. 13-6212, 2013 WL 6579129, at * 2 (D.N.J. Dec. 13, 2013) (stating Plaintiff's elimination of federal claims following removal does not "automatically divest this court of jurisdiction over the matter"). Although the federal claims may fall away, whether by amendment or dismissal on motion, the district court may, under 28 U.S.C. § 1367(c), exercise supplemental jurisdiction over any remaining state claims. *Bonanni*, 2013 WL 6579129, at * 2 (quoting *Carlsbad Tech. Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639-40 (2009)). Whether to exercise supplemental jurisdiction is entrusted to the sound discretion of the Court. *Brathwaite v. City of Long Branch*, No. 19-18332, 2023 WL 3034098, at *2 (D.N.J. Apr. 21, 2023) (citations omitted).

Where federal claims that were the basis for a court's jurisdiction are dismissed, the Court should consider any attempt to manipulate the forum. *Carnegie-Mellon Univ.*, 484 U.S. at 357 ("A district court can consider whether the plaintiff has engaged in any manipulative tactics when

15

it decides whether to remand a case."). *See also Dirauf v. Berger*, 506 F. Supp. 3d 254, 266 (D.N.J. 2020). However, that is not a dispositive factor under § 1367. "In deciding whether to remand, the district court should consider what best serves the principles of economy, convenience, fairness, and comity." *Trans Penn Wax. Corp v. McCandless*, 50 F.3d 217, 233 (3d Cir. 1995) (*citing Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988)). Indeed, "even if the Court were to determine that Plaintiff is motivated by forum manipulation, the considerations of judicial economy, convenience, and fairness all weigh neutrally, if not in favor of remand, although the interest of comity between the federal and state courts weighs heavily in favor of remand." *Brathwaite*, 2023 WL 3034098, at *5; *see also id.* at *5-6 (declining to exercise supplemental jurisdiction and remanding case even though the "[p]laintiff's motivation behind amendment could be suggestive of forum shopping").

This Courts finds no evidence of gamesmanship on the part of Plaintiff. It is true, Plaintiff's deletion of allegations of interference with her health benefits may demonstrate her desire to litigate her case in state court. Or, as Plaintiff avers, the amendments were to clarify an inartful initial pleading and establish that she did not seek to bring claims for disability benefits under ERISA. In any event, Plaintiff is well within her right to amend her Complaint to add or remove claims, particularly at such an early stage in the proceedings. *See Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987). ("The [well-pleaded complaint] rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law."); *see also Dirauf*, 57 F.4th at 109. This Court, however, cannot conclude Plaintiff's Amended Complaint demonstrates any manipulative tactics. This is not a case where Plaintiff suffered adverse rulings before this Court and as a result now seeks a second bite at the apple at state level. *See Collura v. Philadelphia*, No. 12-4398, 2013 WL 3952522, at *3-4 (E.D. Pa. Aug. 1, 2013) (denying the

16

plaintiff's motion for remand following two adverse rulings because it was a "clear attempt to forum shop"); *see also Edington-Latham v. Unified Vailsburg Servs. Org.*, No. 22-1465, 2022 WL 51001598, at *2 (D.N.J. July 14, 2022) (concluding the plaintiffs' abandonment of their federal claims following removal was not per se forum manipulation, particularly without an attempt to invalidate adverse rulings in the federal court). In actuality, the procedural history illustrates quite the opposite. Here, Plaintiff established a desire for her claims to be heard in state court, evidenced by her filing in Morris County's Law Division in the first instance. She plead purely claims sounding in state law. Further, Plaintiff's prompt action of both amending her Complaint and seeking remand in the early stages of litigation, further supports her claim that her deletions from the Amended Complaint were done to clarify her state law claims.

Even if this Court were to characterize Plaintiff's actions as manipulative, as noted, such evidence is merely one factor the Court considers when determining whether to exercise supplemental jurisdiction over Plaintiff's state law claims. *See Trans Penn Wax. Corp.*, 50 F.3d at 233. ("[A]n effort by the plaintiff to manipulate the forum should be considered along with other factors in the decision whether to remand."). *See also Cabbibo v. Parsons Inspection & Maintenance Corp*, No. 9-3213, 2009 WL 3074731, at *7 (D.N.J. Sept. 23, 2009) (stating "[t]he factor of potential forum manipulation is but one of many, so it should not unduly outweigh the other factors"); *Knopp v. Shell Oil Co.*, No. 20-3098, 2020 WL 7334094, at *4 (D.N.J. Dec. 14, 2020) (finding remand appropriate even when the plaintiff did not withdraw a federal claim until defendants' motion to dismiss, more than three months following removal because the additional applicable factors weighed in favor of remand).

Accordingly, this Court finds the remaining factors—judicial economy, convenience, fairness, and comity—weigh decisively in support of declining to retain jurisdiction. This case is

17

still in its earliest stages. Indeed, a pretrial scheduling order has not yet been issued, nor has discovery begun. Moreover, absent this Court's engagement regarding the issue of remand, it has not been involved in the matter to any substantial degree. Accordingly, judicial economy weighs in favor of remand. *See Dirauf,* 506 F. Supp. 3d at 267 (declining to exercise supplemental jurisdiction in a case still in its early stages, and where the Court had not "expended substantial resources" on the matter) (internal citation omitted). Further, this Court finds no drawback to remand with respect to convenience as Defendants fail to set forth a persuasive reason which distinguishes the location of this courthouse and that of Morris County's Superior Court. This is further supported by the fact that NPC's principal place of business is in Morris County. Finally, considerations of comity also weigh in favor of remand, as the case presents solely state law causes of action sounding in anti-discrimination and anti-retaliation. *See Ortiz v. Univ. of Med. & Dentistry of N.J.*, No. 8-2669, 2009 WL 2194782, at *4 (D.N.J. July 23, 2009) (finding the factor of comity weighed in favor of remand because Plaintiff's claims arose under the New Jersey Constitution and therefore should be heard and decided in a state forum). Therefore, this Court recommends that the District Court grant the instant motion and remand this matter to the Superior Court of New Jersey, Law Division, Morris County.[3]

---

[3] This Court rejects Plaintiff's request for attorneys' fees incurred in combatting Defendants' action of removal. Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." However, under the statute, courts are instructed to limit an award of attorney's fees "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). In the alternative, if an objectively reasonable basis exists, a request for attorneys' fees should generally be denied. *Id.* Based on this Court's determination that Plaintiff's initial Complaint could possibly be read as implicating ERISA, this Court finds Defendants' removal was objectively reasonable, and therefore denies Plaintiff's request for attorney's fees. *See id.* (stating district courts maintain broad discretion to award or deny fees).

### III. CONCLUSION

For the reasons set forth above, the Undersigned respectfully recommends that the District Court grant Plaintiff's motion and remand this matter to the Superior Court of New Jersey, Law Division, Morris County.  The parties have fourteen (14) days to file and serve objections to this Report and Recommendation.  *See* 28 U.S.C. § 636; Local Civil Rule 72.1(c)(2).

*s/ Michael A. Hammer*
**Hon. Michael A. Hammer**
**United States Magistrate Judge**

**Dated:**  October 17, 2023